IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 19-cv-01512-CMA

ROCKY MOUNTAIN WILD,
SAN LUIS VALLEY ECOSYSTEM COUNCIL, and
WILDERNESS WORKSHOP,

    Petitioners,

v.

DAN DALLAS, *in his official capacity as Forest Supervisor*,
TAMARA WHITTINGTON, *in her official capacity as Deputy Regional Forester*,
BRIAN FEREBEE, *in his official capacity as Regional Forester*,
UNITED STATES FOREST SERVICE, *a Federal Agency within the U.S. Department of Agriculture*,
ANNE TIMBERMAN, *in her official capacity as Western Colorado Supervisor*, and
U.S. FISH AND WILDLIFE SERVICE, *a federal agency within the Department of the Interior*,

    Respondents.

---

## ORDER GRANTING PARTIAL MOTION TO DISMISS AND GRANTING MOTION TO INTERVENE

---

This matter is before the Court on Respondents' Partial Motion to Dismiss Petitioners' Complaint (Doc. # 8) and Leavell-McCombs Joint Venture's Motion for Leave to Intervene (Doc. # 11). Both Motions have been fully briefed. (Doc. ## 10, 14, 17, 21.) For the following reasons, the Court grants both Motions.

### I.    BACKGROUND

This case involves Leavell-McCombs Joint Venture's ("Landowner") plans to develop resort facilities on a parcel of land that it owns in Wolf Creek, Colorado.

Landowner's plans have been complicated by the fact that its parcel is surrounded by federal land, which limits Landowner's ability to access and develop its property. Thus, Landowner has sought to construct a road that facilitates its development goals.

In February 2019, the United States Forest Service ("USFS") issued a final Record of Decision ("2019 ROD") in response to Landowner's request for access to its property. The 2019 ROD grants Landowner "a right-of-way to construct an access road across Forest Service land from Highway 160 to its private property." (Doc. # 8 at 6.) Respondents maintain that Landowner is statutorily entitled to access its parcel under the Alaska National Interest Lands Conservation Act ("ANILCA"). Petitioners, on the other hand, allege that Respondents "have taken final agency action to issue private interests in federal lands and granted access necessary to build a massive resort development without considering or taking the steps necessary to reduce and eliminate impacts to the surrounding National Forest System lands." (Doc. # 1 at 4.)

Petitioners initiated this case on May 28, 2019. (*Id*.) On August 23, 2019, Respondents filed a Partial Motion to Dismiss in which Respondents argue that some of Petitioners' claims should be dismissed because they are based on erroneous legal theories regarding the ANILCA. *See generally* (Doc. # 8). Additionally, on September 19, 2019, Landowner filed a Motion for Leave to Intervene, arguing that it should be permitted to intervene in this case because its property rights may be adversely affected by the outcome. (Doc. # 11.)

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Thus, "legal question[s] [are] appropriately resolved in a 12(b)(6) ruling." *Hall v. Bellmon*, 935 F.2d 1106, 1113 (10th Cir. 1991).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Id*. at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they

3

plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III. DISCUSSION

The Court will analyze the arguments that Respondents raise in their Partial Motion to Dismiss before turning to Landowner's Motion to Intervene.

### A. RESPONDENTS' PARTIAL MOTION TO DISMISS

Respondents' Motion challenges the legal premises upon which Petitioners' Complaint is based. Specifically, the Motion raises two questions that form the basis of various claims for relief in the complaint: (1) whether the ANILCA's access provision applies to states other than Alaska; and (2) whether the ANILCA authorizes USFS to regulate private land use. The Court answers the first question in the affirmative and the second question in the negative.

1. <u>Whether the ANILCA's Access Provision Applies Outside Alaska</u>

In their sixth claim for relief, Petitioners assert that USFS's "conclusion that ANILCA requires enhanced road access is contrary to law." (Doc. # 1 at 71.) That claim is premised on Petitioners' argument that "ANILCA was adopted to address peculiar questions involving Alaskan lands, including Alaskan inholdings created at statehood" and, thus, "[a]pplication of ANILCA to National Forest System lands in Colorado is precluded by the plain language of the statute." (*Id*. at 72.) In the instant Motion, Respondents argue that, "although much of ANILCA is particular to the State of Alaska, section 3210(a) is not." (Doc. # 8 at 7.) The Court agrees with Respondents.

With respect to "[r]easonable use and enjoyment of land within boundaries of National Forest System," the ANILCA provides:

> Notwithstanding any other provision of law, and subject to such terms and conditions as the Secretary of Agriculture may prescribe, **the Secretary shall provide such access to nonfederally owned land within the boundaries of the National Forest System as the Secretary deems adequate to secure to the owner the reasonable use and enjoyment thereof** . . . .

16 U.S.C. § 3210(a) (emphasis added). Thus, the terms of the ANILCA's access provision are not explicitly limited to Alaska. Rather, the terms refer to "land within the boundaries of the National Forest System," which extends across the nation.

Accordingly, the Tenth Circuit has observed that "Section 3210(a) of ANILCA applies to all National Forest System lands, not just those in Alaska." *United States v. Jenks*, 22 F.3d 1513, 1516 n.3 (10th Cir. 1994); *see also Peper v. U.S. Dep't of Agric.*, 478 F. App'x 515, 521 (10th Cir. 2012) (applying ANILCA's access provision to claim that arose in Colorado); *accord Fitzgerald Living Tr. v. United States*, 460 F.3d 1259,

1262 (9th Cir. 2006) ("ANILCA is not limited to national forest land located in the state of Alaska, but rather applies nationwide." (citing *Mont. Wilderness Ass'n v. U.S. Forest Serv.*, 655 F.2d 951, 957 (9th Cir. 1981))). In *Jenks*, the court explained that Congress passed the access provision "[i]n order to 'resolve any lingering legal questions concerning inholders' right of access to their property . . . ." *Jenks*, 22 F.3d at 1516 (citation omitted).[1]

Congress's intent to provide a uniform standard as to inholders' rights would undoubtedly be frustrated if the statute only applied to one state. Therefore, in congruence with the Tenth Circuit's reasoning in *Jenks*, the Court concludes that Section 3210(a) of the ANILCA is nationally applicable.

2. <u>Whether the ANILCA Authorizes USFS to Regulate Private Land Use</u>

In their sixth claim for relief, Petitioners assert that "[e]ven where ANILCA is applicable, the [USFS] has the power to deny or condition approval of a private access request."[2] (Doc. # 1 at 72.) In the instant Motion, Respondents argue that although § 3210(a) of the ANILCA provides that an inholder's access rights are "subject to such terms and conditions as the Secretary of Agriculture may prescribe," this access provision only grants "[t]he Forest Service . . . the authority to reasonably regulate the

---

[1] "Inholders" are "owners of private property completely surrounded by federally owned National Forest System lands." *Adams v. United States*, 255 F.3d 787, 790 (9th Cir. 2001).

[2] This theory actually underlies several of Petitioners' claims. For example, in their second claim for relief, Petitioners allege that Respondents should have considered, *inter alia*, "conditioning expanded access for [Landowner's] construction and operation based on enhanced mitigation measures, reservations of rights, restrictions on exchanged lands, and ANILCA terms and conditions." (*Id*. at 63.) Those claims are limited to the extent that they rely on the legal theories that the Court has rejected in this Order.

[inholder's] easement." *Adams v. United States*, 255 F.3d 787, 795 (9th Cir. 2001) (citation omitted). Respondents argue that, "[a]s a matter of law, ANILCA does not vest the Forest Service with authority to regulate the activities of the owners of private inholdings on their private land." (Doc. # 8 at 9.)

The USFS has interpreted its authority under the ANILCA, similarly regarding the establishment of terms and conditions governing access for inholders as being limited to the means of accessing an inholder's property:

> **these rules do not purport to give the Forest Service the right to tell a landowner what use may be made of non-Federal land**. The rules merely implement the authority granted by ANILCA to limit the **mode and manner of access across the Federal land** to that which the authorized officer determines to be needed for the reasonable use of the private land.

56 Fed. Reg. 27,410 (June 14, 1991) (emphasis added).

The ANILCA does not require USFS to permit an inholder's use of federal land if USFS decides that the inholder's use of private land would be an "unreasonable use of the non-Federal land." *Id*. However, USFS's determination of what constitutes a "reasonable use" of an inholder's land does not authorize USFS to regulate the inholder's land use. As USFS has explained in its interpretation of its authority under the ANILCA:

> It is not the intent of [USFS] to regulate the uses made on non-Federal land; that is a function of the State and local governments. A landowner's use of non-Federal land is limited by these regulations only to the extent that the facilities and modes of access authorized on the Federal land limit the use and enjoyment of the non-Federal land to that which is determined to be reasonable by the authorizing officer. **The authorized officer's determination of what constitutes reasonable use and enjoyment of the non-Federal property is only pertinent to the decisionmaking process on the use to be made of the Federal land**. The final rule retains the provision for the authorizing officer to determine what constitutes

7

reasonable use and enjoyment of the non-Federal property because that is what the [ANILCA] requires.

56 Fed. Reg. at 27,413.

Petitioners' sixth claim for relief fails as a matter of law because it is based on the assertion that the USFS failed to exercise its power to regulate Landowner's use of its property. The ANILCA does not provide USFS with the authority to regulate an inholder's use of her private property. The more expansive interpretation of USFS's authority under the ANILCA argued for by Petitioners would require a more definitive statement from Congress. *See Rapanos v. United States*, 547 U.S. 715, 738 (2006) ("Regulation of land use . . . is a quintessential state and local power.").

**B.    LANDOWNER'S MOTION TO INTERVENE**

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, a nonparty seeking to intervene as of right must establish: (1) timeliness; (2) an interest relating to the property or transaction that is the subject of the action; (3) the potential impairment of that interest; and (4) inadequate representation by existing parties. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). The Tenth Circuit follows "a somewhat liberal line in allowing intervention." *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1198 (10th Cir. 2010) (quoting *WildEarth Guardians v. USFS*, 573 F.3d 992, 995 (10th Cir. 2009)). Thus, the Tenth Circuit has explained that "[t]he factors of Rule 24(a)(2) are intended to 'capture the circumstances in which the practical effect on the prospective intervenor justifies its participation in the litigation,' and '[t]hose factors are not rigid, technical requirements.'" *Id*. (quoting *San Juan County v. United States*, 503

F.3d 1163, 1195 (10th Cir. 2007)). Landowner's Motion establishes that it is entitled to intervene in this case as a matter of right.

1. <u>Timeliness</u>

"The timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Kane Cty., Utah v. United States*, 928 F.3d 877, 890–91 (10th Cir. 2019) (quoting meet *Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001)). "[D]elay in itself does not make a request for intervention untimely." *Id*. (quoting *Oklahoma ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1235 (10th Cir. 2010)). "The other factors in the test for untimeliness must also be considered." *Id*. (quoting *Tyson Foods*, 619 F.3d at 1235).

Petitioners initiated this case on May 28, 2019. (Doc. # 1.) Landowner filed its Motion to Intervene approximately three months later. (Doc. # 11.) At that point, the case was still in its infancy. Thus, Landowner did not unreasonably delay in seeking intervention. *See Zinke*, 877 F.3d at 1164–65 (holding that the motion was timely where the intervenors moved to intervene "just over two months after" learning of the lawsuit that could potentially affect their interests). Additionally, Landowner's intervention will not result in any inconvenience to Petitioners beyond "having to respond to excess briefs," which does not amount to prejudice. *Kane*, 928 F.3d at 891. On the other hand, Landowner could face significant prejudice if it is not permitted to intervene because its

9

property rights would be litigated in its absence. Therefore, because there are no "unusual circumstances," Landowner's motion is timely.

      2.    <u>Interest That May Be Impaired by The Outcome of This Case</u>

In order to intervene as a matter of right, a movant "must have an interest that could be adversely affected by the litigation." *Id*. (quoting *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1199 (10th Cir. 2007)). Courts apply "practical judgment" when "determining whether the strength of the interest and the potential risk of injury to that interest justify intervention." *Id*. (footnote omitted). Establishing the potential impairment of such an interest "presents a minimal burden," *WildEarth Guardians*, 604 F.3d at 1199, and such an impairment may be "contingent upon the outcome of [ ] litigation," *Kane*, 928 F.3d at 891 (quoting *San Juan Cty.*, 503 F.3d at 1203).

Landowner has owned the "nonfederally owned land within the boundaries of the National Forest System—land *that is the subject of this dispute*—for decades." (Doc. # 21 at 2; Doc. # 21-1.) Additionally, Landowner has an interest in the access roads crossing federal land that USFS approved, and that Petitioners challenge. (Doc. # 7 at 6.) As a result, Landowner has an economic stake in the outcome of this case because its development plans will be materially affected if it were unable to construct access roads to its property. Therefore, Landowner has a sufficient interest to warrant intervention. *See, e.g.*, *United States v. Albert Inv. Co.*, 585 F.3d 1386, 1393 (10th Cir. 2009) ("The threat of economic injury from the outcome of litigation undoubtedly gives a [movant] the requisite interest." (quoting *WildEarth Guardians*, 573 F.3d at 996)).

### 3. Inadequate Representation by Existing Parties

In order to intervene as a matter of right, a movant must show that existing parties may not adequately represent its interest. "This burden is 'minimal,' and 'it is enough to show that the representation 'may be' inadequate.'" *Kane*, 928 F.3d at 892 (quoting *Nat. Res. Def. Council v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978)). "Of course, representation is not inadequate simply because the applicant and the representative disagree regarding the facts or law of the case." *Id*. (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984)). "Nor is representation inadequate merely because the representative enters into a [settlement], because any case, even the most vigorously defended, may culminate in a [settlement]." *Id*. (quoting *Sanguine*, 736 F.2d at 1419).

"When a would-be intervenor's and the representative party's interests are 'identical,'" courts "presume adequate representation." *Id*. (quoting *Bottoms v. Dresser Indus., Inc.*, 797 F.2d 869, 872 (10th Cir. 1986)). However, where, as here, the purportedly adequate representative of the proposed intervenor's interest is a governmental entity, "this presumption [can be] rebutted by the fact that the public interest the government is obligated to represent may differ from the would-be intervenor's particular interest." *Id*. (quoting *Utah Ass'n of Ctys.*, 255 F.3d at 1255).

In the instant case, Respondents' interests are not identical to Landowner's. "In litigating on behalf of the general public, the government is obligated to consider a broad spectrum of views, many of which may conflict with the particular interest of the would-be intervenor." *Id*. (quoting *Clinton*, 255 F.3d at 1256). Additionally, "it is not

11

realistic to assume that [an] agency's programs will remain static or unaffected by unanticipated policy shifts." *Id*. (quoting *Kleissler v. United States Forest Serv.*, 157 F.3d 964, 974 (3d Cir. 1998)). On the other hand, Landowner has a strong interest in preserving its ability to construct access roads to its property, and Landowner's interest is unlikely to shift based on governmental policy considerations. Consequently, the Court is satisfied that Landowner has "met the minimal burden of showing that [its] interests may not be adequately represented by the existing parties." *Id*. Therefore, Landowner may intervene in this case pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

- Respondents' Partial Motion to Dismiss Petitioners' Complaint (Doc. # 8) is GRANTED;
    - Petitioners' sixth claim for relief is DISMISSED WITH PREJUDICE because it fails as a matter of law;
    - The remaining claims are limited to the extent that they rely on the legal theories that the Court has rejected in this Order, *see supra* Section III(A)(1–2);
- Leavell-McCombs Joint Venture's Motion for Leave to Intervene (Doc. # 11) is GRANTED;

- Leavell-McCombs Joint Venture may renew its Motion to Dismiss (Doc. # 12) in accordance with Judge Blackburn's Order Directing Reassignment (Doc. # 23 at 2);

- The parties are DIRECTED to consult with one another and submit a stipulated briefing schedule to the Court on or before **May 1, 2020**.

DATED: March 31, 2020

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge