**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-1512-CMA

ROCKY MOUNTAIN WILD; SAN LUIS VALLEY ECOSYSTEM COUNCIL; SAN JUAN
CITIZENS ALLIANCE; WILDERNESS WORKSHOP;
     Plaintiffs,
      v.
DAN DALLAS, TAMARA WHITTINGTON, BRIAN FEREBEE, UNITED STATES
FOREST SERVICE, ANNE TIMBERMAN, and U.S. FISH AND WILDLIFE SERVICE;
     Defendants.

LEAVELL-MCCOMBS JOINT VENTURE,
     Defendant-Intervenor.

─────────────────────────────────────────────────────────

**MOTION TO COMPEL PRODUCTION OF THE ADMINISTRATIVE RECORD**

─────────────────────────────────────────────────────────

Plaintiffs ("Conservation Groups"), through Counsel, request an order compelling

production of all documents that comprise an entire Administrative Record ("AR") for the

2019 Final Record of Decision, the 2014 Final Environmental Impact Statement, all

Forest Service consultations with the Fish and Wildlife Service, and all interlocutory

decisions and steps taken by the Defendants (collectively "Agencies") to support and

approve the Leavell-McCombs Joint Venture ("LMJV") request. Discovery is also sought

to support AR completion and extra-record supplementation.

I.    **Background**

The current controversy turns on a special use permit application, filed on July

24, 2008 (Ex. 1), that "amends in its entirety the application previously

submitted on February 12, 2008 that amended the prior June 12, 2001 and June 13,

2003 versions, to obtain authorizations for road access and utility corridors across

National Forest System lands from US Highway 160" to the LMJV parcel. Ex. 2 at 1.

The 2008 request generated considerable agency concerns. W01500 (Colorado Department of Transportation Letter); Ex. 3-6, 7 ("design is not feasible"). The 2008 request was amended several times, including the 2010 addition of a land exchange request that was granted, and then set aside in previous litigation. VWC02799 (merits opinion). LMJV revised its application in 2018, while its appeal was pending, through a series of demands sent directly to Forest Service personnel. Ex. 8 at 2, VWC02824.

Agency records (Ex. 1-7) produced in response to the 2008 Freedom of Information Act ("FOIA") request partially document agency activities conducted in 2008 in conjunction with the Notice of Intent to prepare an EIS. Doc. #1 at ¶3 citing 73 FR 54786 (September 28, 2008). FOIA requests were also filed in February 2014 and November 2014 in anticipation of the 2014 FEIS and 2015 ROD, with litigation required to gain access to the agency records. *RMW v. USFS*, 14-cv-2496-WYD (February Request); *RMW v. USFS*, 15-cv-127-WJM (November Request).

The most recent FOIA request was filed on July 20, 2018 to obtain agency records created or obtained after the 2014 FOIA searches, to participate in the agency objection period in 2018, and to learn what the Forest Service had done after issuing the 2015 ROD. Ex. 9 at 2 (specifying the FOIA Request was limited to documents created after the 2014 FOIA searches). The agency failed to timely disclose records (Ex. 10), and the 2018 FOIA litigation remains unresolved. Ex. 11 (*RMW v. FS*, 18-cv-03065-MEH at Doc. #43) (disputed/proposed schedules for *Vaughn* index and summary judgment briefing schedule). Over 140,000 pages of agency records were produced after the deadline to file objections *Id.* at 2. The Forest Service contractor is preparing a voluminous *Vaughn* index to document the extensive redactions. *Id.* The 4,113 page

2

Forest Service AR contains a small subset of the ongoing FOIA production, released on 27 DVDs, confirming that the AR is incomplete. *Id.* Once complete, Plaintiffs reserve the option to supplement with some or all of the FOIA production, as extra-record evidence.

Conservation Groups seek leave to conduct discovery and the opportunity to supplement with extra-record evidence to inform judicial review of agency actions made without benefit of an administrative record. Doc. #1 at ¶¶21-28 (listing agency actions).

### A.  Current Litigation

The present litigation was sparked by a series of LMJV demands made in late 2017, and early 2018. VWC02257, VWC02263, VWC02358. This updated request was made surreptitiously during the 10th Circuit Mediation process, while LMJV's appeal of Judge Match's decision was pending, and while the Solicitor General was deciding whether to pursue an appeal. VWC02264, Ex. 8 (copy of LMJV email showing the sender and all recipients is not contained in the AR). Without regard to Judge Matsch's Orders (*see* Doc. #1 at ¶2), LMJV asserted that "[t]he 2015 ROD and associated environmental impact statement ("EIS") has already thoroughly analyzed the environmental impacts of a specific road (together with *appurtenant utility easements*)" while confirming that LMJV sought to construct transportation and utility access improvements of "a *type and location similar* to" the previous "development scenarios." VWC02265 (emphasis supplied).

The Agencies' decisions and actions continue to reject previous judicial orders confirming the analyses conducted during previous attempts to respond to LMJV's applications failed to satisfy the Agencies' legal duties and responsibilities to manage the National Forest and protect ESA-listed species. VWC04094 (2019 FROD ignoring

NEPA rulings and asserting that Judge Matsch's orders were based on "assumed" and "overlook[ed]" facts).

The challenged decisions are *fruit* of many *poisoned analytical trees* the Court has found arbitrary, capricious and contrary to law over two decades, including the 2014 FEIS. Ex. 2 at 1, Doc. #1 at ¶2 *quoting Rocky Mountain Wild, et al. v. Dallas*, *et al*, 15-cv-01342-RPM, Doc. #82 at 4-5; VWC02244 ("SIR [Supplemental Information Report] does not intend to correct [NEPA] deficiencies identified by the district court.").

### 2.    Preparation of the Administrative Record

The two proffered declarations do not provide details on the creation, maintenance, and certification of an admistrative record. Doc. #26-2 (Kurt Broderdorp, Fish and Wildlife Service ("FWS") Biologist, Grand Junction, Colorado); Doc. #26-1 (Guy Blackwolf, Rio Grande National Forest Environmental Coordinator, Monte Vista, Colorado). None of the decisionmakers offered proof to establish what was, and was not, considered in reaching the final and interlocutory agency actions at issue in this litigation.

As low-level federal employees, Mr. Broderdorp and Mr. Blackwolf lack the legal and organizational authority to speak on behalf of Defendants Dan Dallas, Tamara Whittington, Brian Ferebee, United States Forest Service, Anne Timberman, and the U.S. Fish And Wildlife Service (doc. #1 at ¶57-60), or decisionmakers identified by the AR. WWC02249 (Tom Malecek); WWC02249 (Peter MacDonald).

### 3.    Agency Actions and Decisions Requiring an AR

The final agency actions, interlocutory agency decisions, and the decisionmakers include, but are not limited to:

- **Final Record of Decision ("2019 FROD" - VWC04088)**, signed by **Dan Dallas** (VWC04113), authorizing road and utility access via ANILCA special use permits. *Id.* at VWC04097-100; *see also* VWC02266 (LMJV application stating that "All utilities will be located within the Private Land, the Primary Access Road and previously identified easements.").

- **Final Environmental Impact Statement ("2014 FEIS" - W10694)** that was relied on by **Dan Dallas** to analyze and compare land exchange with ANILCA-based special use permits authorizing road and utility rights of way. VWC04113; VWC02264 (LMJV assertion that 2014 FEIS already considered a "specific road (together with appurtenant utility easements)").

- **Supplemental Information Report ("2019 SIR" - VWC02244)** contains the determination by **Tom Malecek**, Deputy Forest Supervisor, that the Agencies would rely on the 2014 FEIS and forego further NEPA analysis. WWC02249.

- **Biological Assessment ("2018 BA" - VWC02196 )** contains determinations of **Peter McDonald**, Program Leader, Threatened, Endangered, and Sensitive Species, Rocky Mountain Region, Forest Service, including the July 18, 2018 decision to "borrow extensively" (VWC02113) from 2014 FEIS and 2015 FROD to define the agency action (VWC02179) and limit the scope of the Section 7 consultation. VWC02111 *citing* 50 CFR 402.12(f).

- **Biological Opinion ("2018 BO" - VWC02198)** determinations by **Ann Timberman**, West Slope Supervisor, FWS that agency action "is not likely to jeopardize the continued existence of lynx." *Id.* at 2227 *citing* U.S.C. 16 U.S.C. § 1536(o)(2) ("Section 7(o)(2)"), 50 C.F.R. §402.14.(i)(3).

- **Incidental Take Statement ("2018 ITS" - VWC02226-30)** determination by **Ann Timberman** concluding that "adverse effects and [otherwise prohibited] take would result from implementation of the proposed action" (VWC02198, 2225) and granting FWS-authorized protective coverage from ESA take liability through "Reasonable and Prudent Measures" and "Terms and Conditions" negotiated among Agencies and LMJV. VWC0228-31; USFWS_000349 (email confirming LMJV comments incorporated into draft BOs shared with LMJV's agent, Clint Jones).

- **Wolf Creek Ski Area's Mater Development Plan ("2015 WSCA MDP" - VWC01604)** contains **Dan Dallas**'s November 10, 2015 approval of the ongoing implementation of the Wolf Creek Ski Area's expansion plans, without further consideration of impacts from LMJV's development proposal. *See* VWC01609 (**Meadow Lift Decision Notice ("Meadow Lift DN") - Dan Dallas** statement that "WCSA MDP was designed independently from the proposed Village at Wolf Creek development plans" VWC01604).

- Rocky Mountain Wild's July 20, 2018 Freedom of Information Act Requests **("FOIA Request" - Ex. 9)** seeking agency records to support its participation in the Forest Service decisionmaking, including **Brian Ferebee, Regional Forester**, letter confirming that no records were disclosed until March 6, 2019. (Ex. 10).

- **Tamara Whittington's** September 20, 2018 denial of request for extension of the Objection filing period. **VWC03825 ("Extension Denial")** *citing* 36 C.F.R. §218.6 (d).

- **Tamara Whittington's** October 17, 2018 decision **("Objection Dismissals" - VWC03927)** sent to unidentified persons that set aside unspecified Objections by determining that the Objections were untimely or the Objector had not submitted comments on the 2012 Draft Environmental Impact Statement. *Id. citing* 36 CFR 218.10(a)(3).

- **Tamara Whittington's** November 19, 2018 resolution of administrative objections **(Objection Denial - VWC03928)** conditionally denied 65 administrative objections, *en masse*. VWC0390-91.

- Response to Objections on the Village at Wolf Creek Access Project, Rio Grande National Forest **("2018 Objection Response" - VWC03932)** contains an unsigned and unattributed first person analysis that **Tamara Whittington** asserts as her basis for the Objection Denial and Objection Dismissal. VWC003928 (referencing "my objections response").

No AR was provided for the 2019 SIR, 2018 BA, 2015 WSCA MDP, Meadow Lift DN, FOIA Request, Extension Denial, Objection Dismissals, Objection Denial, or the 2018 Objection Response.

### 4.    Contents of ARs Filed by the Agencies

The AR was prepared during litigation by the Agencies' litigation team and produced on April 10, 2020 in three parts: 1) Forest Service AR (documents with "W" in Bates number) as supplemented during the 2015 land exchange litigation with extra-record FOIA-released agency records (documents with "C" and "CP" prefixes); 2) Forest Service 2019 FROD on LMJV's request for ANILCA-based road and utility access; and, 3) FWS Records related to the 2019 decision. Doc. ##26-34.

The 2015 FWS AR (Ex. 12) from the land exchange litigation was not included in the Agencies' AR, even though 2013 FWS analysis (USFWS_002969) was relied upon in the 2018 BO. VWC02235-36 (listing previous ESA consultations and analysis relied upon by 2018 BO); USFWS_002970 -1 (2013 BO setting out ESA consultation history).

The SIR relied on the 2014 FEIS (VWC02249), but the 2014 FEIS contractor's records were not in the previous AR, as supplemented, and "were never presented to the agency." *Rocky Mountain Wild v. U.S. Forest Service*, 878 F.3d 1258, 1262 (10th Cir. 2018).  In conferral, Agencies' counsel confirmed that no additional contractor records were sought or included in the AR filed in the present litigation.

### 5.    Rule 7.1 Conferral

On June 9, 2020, Plaintiffs' and Agencies' counsel conferred by phone call and discussed categories of records addressed in the present Motion.  Agencies' counsel expressed opposition to a number of the categories, opposed discovery, and agreed to confer with the Agencies on some matters.  On June 15, 2020, by email, Plaintiffs' counsel confirmed that, except for standing declarations, the Agencies and LMJV oppose a motion to supplement, complete, or conduct Administrative Record discovery.

## II.   Standards Applied to Establish Judicial and Administrative Records

As the Tenth Circuit "explained in *Bar MK Ranches*, under the Administrative Procedure Act [("APA")], a district court reviews an agency action based on the full administrative record (not merely on agency records), which 'consists of all documents and materials directly or indirectly considered by the agency.'" *Rocky Mt. Wild*, 878 F.3d at 1262 *quoting Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993). FOIA standards are distinct from those applied in APA litigation. *Id.*  "The focal point for

judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).

When an administrative record already exists, "the designation . . . is entitled to a presumption of administrative regularity." *Bar MK Ranches,* 994 F.2d at 740 (citation omitted).  The presumption can be overcome by showing, "'among other things, [that] defendants applied the wrong standard'" when initially compiling the administrative record. *Pitman v. U. S. Citizenship and Immigration Services*, 2018 WL 3232355 * 3 (D. Utah July 2, 2018) (citation omitted). When the administrative record omits documents that were before the agency at the time of its decision, a court may order the agency to refile a complete administrative record. *See, e.g., Water Supply & Storage Co. v. U.S. Dep't of Agric.*, 910 F. Supp. 2d 1261, 1265 n.4 (D. Colo. 2012) (citation omitted).

III.    **Argument**

The declarations do not describe how any Agencies decisionmaker created or maintained an AR for any challenged final agency action or interlocutory decision, and there is no basis to analogize the AR to a District Court record provided for appellate review**.** *Olenhouse v. Commodity Credit Corp.***,** 42 F.3d 1560, 1556 (10th Cir. 1994) (failure to base judicial review on "the administrative record" and the grounds set forth by the agency during the administrative proceeding constitutes "prejudicial error").

A.    **The Agencies applied the Wrong Standard**

The Agencies' AR was made during litigation, not during the administrative proceedings. No decisionmaker submitted a declaration setting out the documents considered, directly or indirectly, in taking the underlying actions, and no presumption of regularity should be afforded an AR prepared during litigation with no decisionmaker

attesting as to the contents. *Bar MK Ranches,* 994 F.2d at 740 (citation omitted).

Several categories of omissions require either an order allowing the parties to

reconstruct the AR during this litigation, or simply setting aside the agency actions.

*Olenhouse*, 42 F.3d at 1577 ("attempt to supply a reasoned basis for the agency's

action therefore was impermissible and prejudicial").

### 1.   No Privileged Records and No Privilege Log in AR

The Agencies applied the wrong standard by omitting documents subject to

withholding or redaction without "invocation of the deliberative process privilege, as

documented in a privilege log." *Ctr. for Biological Diversity v. Bernhardt*, 2020 U.S. Dist.

LEXIS 92370, at *20 (S.D. Fla. May 26, 2020).  "[T]he scope of the [deliberative

process] privilege doesn't define the scope of the material directly or indirectly

considered. If a privilege applies, the proper strategy isn't pretending the protected

material wasn't considered, but withholding or redacting the protected material and then

logging the privilege." *Id. quoting Ctr. for Biological Diversity v. Zinke*, 2018 U.S. Dist.

LEXIS 199287, at *7 (D. Alaska Nov. 15, 2018), *Inst. for Fisheries Res. v. Burwell*, 2017

U.S. Dist. LEXIS 5642, 2017 WL 89003, at *1 (N.D. Cal. Jan. 10, 2017). "The Districts of

Montana and Utah have reached a similar conclusion." *Id. citing Pitman v. United States

Citizenship & Immigration Servs.*, 2018 U.S. Dist. LEXIS 111008, 2018 WL 3232355, at

*3 (D. Utah July 2, 2018); *Ctr. for Biological Diversity v. Zinke*, 2018 U.S. Dist. LEXIS

199287, at *7 n.30 (D. Alaska Nov. 15, 2018); *See Indigenous Envtl. Network v. United

States Dep't of State*, 2018 U.S. Dist. LEXIS 63765, 2018 WL 1796217, at *2-3 (D.

Mont. Apr. 16, 2018).

Similarly, "[a] party resisting discovery on the grounds of privilege cannot establish that privilege solely by relying on a FOIA exemption." *Rosane v. Shannon Cty. Sch. Dist.* 65-1, 2012 U.S. Dist. LEXIS 117967, at *16-17 (D.S.D. Aug. 21, 2012), *Culinary Foods, Inc. v. Raychem*, 150 F.R.D. 122, 125 (N.D.Ill. 1993).  Any party resisting production "must: (1) expressly make the claim; and (2) 'describe the nature of the documents, communications, or tangible things not produced or disclosed […]." *Id. See* Fed. R. Civ. P. 26(b)(5)(A). There is no basis to deviate from this well-established rule, particularly in light of the Tenth Circuit holding that APA and FOIA present different standards. *Rocky Mtn. Wild.*, 878 F.3d at 1262 (explaining that the contractor "black box" "scenario can be remedied through the APA, rather than FOIA.").

Documents provided in response to the 2018 FOIA confirm that in the previous litigation, agency counsel, Kenneth Capps, served as a go-between in assembling a "document dump" into an Administrative Record. Ex. 13.  Mr. Capps also directed that "It should also include all of the documents from OGC DOC LOG (in productions) that are marked responsive but *not* also marked Privileged, AC; Privileged, WP or Privileged, Privacy." *Id.* (emphasis in original).  Mr. Capps is an agency attorney who carried out multiple legal and non-legal roles, and the FOIA records reveal that he effectively thwarted judicial review by creating the AR from a "document dump" and excluding *all* privileged documents. The absence of detail in the Blackwolf Declaration supports the conclusion that Mr. Capps used the same "document dump" process in this litigation, excluded anything deemed privileged, and sent the result to litigation counsel.

The number of relevant, privileged documents withheld in the FOIA litigation is voluminous and will require a contractor to assemble the *Vaughn* index. Ex. 11 at 4-5.

### 2.    The Whole Record must be Produced

The first step in the adversarial process of creating a district court record - production of the whole AR - has not been completed. *Bar MK Ranches*, 994 F.2d at 740 ("An agency may not unilaterally determine what constitutes the Administrative Record"). The 10th Circuit confirmed that "under the APA, a district court reviews an agency action based on the full administrative record (not merely on agency records), which "consists of all documents and materials directly or indirectly considered by the agency." *Rocky Mtn. Wild,* 878 F.3d at 1262 *quoting Bar MK Ranches*, 994 F.2d at 739.

The following section confirms that the "whole record" for the final agency action and each interlocutory agency action has not been produced, leaving Plaintiffs without the basic information required to engage in meaningful motions practice and "frustrating effective judicial review." *Ctr. for Biological Diversity* 2020, U.S. Dist. LEXIS 92370, at *17 (S.D. Fla. May 26, 2020).

### B.    The AR is Incomplete

### 1.    Documents Released and Withheld Pursuant to FOIA

Access to responsive records is subject to ongoing FOIA litigation. Doc. #1 at ¶195. Different standards apply to APA disclosure. *Rocky Mt. Wild*, 878 F.3d at 1262.

As relevant to the present case, the refusal to provide FOIA access during the administrative proceedings provides the legal basis for NEPA and APA relief in the present matter. Doc. #1 at ¶¶120-2, 190, 193-198, 303-4 (Claim 10) (public involvement), ¶313 (undue influence). The FOIA records exceeded 140,600 pages created or obtained since 2015. Ex. 11 at 1.  Yet, the AR includes only 4,113 pages of post-2015 Forest Service documents. The 140,000 pages were provided in massive

document dumps, with duplicates, and no indication of who created, obtained, or maintained any single document. Ex. 10. Many thousands of pages were redacted and withheld. Ex. 11.  APA review requires production of the FOIA-decisionmaking record.

## 2.   Contractor Records

The Forest Service relied on a "black box" approach to contractor records to avoid FOIA standards and the disclosure of the contractor records. *Rocky Mt. Wild,* 878 F.3d at 1262.  During the merits case, Judge Matsch apparently had sufficient administrative record evidence to rule on the 2014 FEIS, 2013 BO, and 2015 FROD, without the resulting delay and complications involved with compelling disclosure of agency records that were still under active FOIA litigation. Doc.12-1 at 13-34 (discussing how to coordinate FOIA litigation and AR disclosures); Ex. 14 (Doc # 48 - Transcript) at 26 (Judge Matsch observing that "this extra stuff may or may not be required. I mean you might win on the merits on the record as it is. I don't know.").

The Agencies did not assemble or collect the contractor records that undisputedly exist, on the mistaken belief that the Agencies "never needed" to review contractor records that were owned by and prepared for the use of the Forest Service. Doc.# 12-1 at 16 line 12; *Rocky Mt. Wild*, 878 F.3d at 1254-5.

> MR. SAMFORD: And so there's a subset of documents that are internal to the contractor or internal to the contractor and the subcontractors that the Forest Service *never needed*. The Forest Service set the categories up front, what it would need. THE COURT: Yeah. MR. SAMFORD: And so *those documents are what are not in the record* and what we would submit are not required to be in the record.

Doc. #12-1 at 16 lines 10-17 (emphasis supplied).

The Court of Appeals' 2018 FOIA ruling (*Rocky Mt. Wild,* 878 F.3d at 1262) prevents the Forest Service from relying on the same AR strategy Judge Matsch elected to overlook in ruling for Conservation Groups in 2017.  It is irrelevant whether the Forest Service believed it "needed" to review the contractor documents. The test is whether undisclosed contractor documents from 2014 EIS preparation were *directly* or *indirectly* considered by the decisionmakers. *Id.*  Direct and indirect consideration may be a question for discovery, but the first step is to compel disclosure of all undisclosed "Forest Service work product belonging to the Forest Service." *Id.* at 1264.

Ignoring undisclosed contractor records provides additional basis for APA relief. For example, Forest Service personnel "Dave Dyer and [Randy Ghormley] rec'd quite a bit of feedback and alarm from our contractor and subcontractors regarding our decision to not go this route in association with the inconsistency with the ALL S1 Standard of the [Southern Rockies Lynx Amendment]" and proposed an approach that may "be more legally sound" than the approach Judge Matsch ultimately set aside. CP002043. The contractor and subcontractor documents, aside from the summary provided by contractor Rick Thompson, were not produced in the AR. Mr. Dyer and Mr. Ghormley are both retired, and if deposed or required to respond to written discovery, are likely to identify similar contractor alarm to establish the relevance and importance of the contractor and subcontractor documents the Forest Service has not sought or reviewed.

The 10th Circuit recognized a FOIA "blind spot" for public review when an agency relies on outside NEPA contractors, but also clarified that the APA "whole record" standard contains no such "bind spot." *Rocky Mt. Wild,* 878 F.3d at 1262. An order to complete the record would remedy the omission. *Ctr. for Biological Diversity*, 2020 U.S.

Dist. LEXIS 92370, at *20 *citing Ctr. for Native Ecosystems v. Salazar,* 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010). Alternatively, the contractor records are discoverable extra-record evidence necessary to determine whether the Agencies considered "all relevant factors including evidence contrary to the agency's position." *Franklin Savings Ass'n v. Office of Thrift Supervision*, 934 F.2d 1127, 1137 (10th Cir. 1991).

### 3.   Pre-2011 Records

The 2008 Settlement Agreement required a new NEPA analysis for any LMJV access proposal.  A June 11, 2008 letter is among the few indications in the Administrative Record that a 2008 Special Use Permit Application existed. W01501. As set out above, the 2008 application and related records are not contained in the previous AR (W prefixes) or current AR (VWC prefixes). Ex. 2-7.

All records from 2008 through 2011 must be produced for APA review. The Forest Service published a Notice of Intent for review of the ANILCA-based special use permit request. 73 FR 54786 (September 28, 2008). In 2008, a NEPA specialist from Arkansas was assigned. Ex. 3-7.  LMJV, apparently dissatisfied with the approach taken by the NEPA specialist, stopped cooperating and the NEPA process "was placed on indefinite hold pending new information and potentially a new application." (W10726).

In 2010, "LMJV […] submitted [its] land exchange proposal as an alternative to an ANILCA enabled easement" sought in the 2008 application. 76 FR 21855 (April 19, 2011). The 2011 NOI confirmed that Tom Malecek and Dan Dallas had resumed control of the NEPA process. *Id.*, W02228, W01529, W0158, W10726. The  land exchange and 2015 FROD were set aside and the underlying BO and 2014 FEIS did not survive APA review. VWC02739 (Order), VWC02779 (Order Denying Reconsideration).

In preparing the previous AR, agency counsel Kenneth Capps directed exclusion of records prepared between 2008 and 2011. Ex. 13. Mr. Capps directed which documents to include, but excluded "those documents also tagged as outside date range" that began in 2011 with Agencies' addition of the land exchange to NEPA consideration. *Id.* By contrast, judicial review of the "whole record" must include documents addressing the information, impacts, alternatives, and omissions in the 2008 Application (Ex. 1-2) and related documents created between 2008 and 2011.

Even if not part of the AR, the pre-2011 documents are extra-record evidence required to assess the data collected and the Agencies' changing positions that eliminated the concerns and access alternatives in the 2008 NOI from further consideration. *See Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 2020 U.S. Dist. LEXIS 95986, at *9-24 (D. Alaska June 1, 2020) (examining change to land exchange that "fails to advance the stated purposes of ANILCA").

### 4.    Communications

The "Communications" category of the Forest Service AR contains five documents. VWC02250-2370. By contrast, the response to RMW's FOIA Request contains more than 140,000 pages emails and other documents considered by the decisionmakers. Ex. 11 at 2.

Emails, many revealing undue influence, are a constant feature of this long-running controversy. Doc. #1 at ¶¶16, 123-7, 185-98, 311-4. For example, the FWS AR, but not the Forest Service AR, confirms that LMJV was afforded opportunities to provide edits and comments on draft documents not afforded the public. USFWS_000349 (email confirming LMJV comments incorporated into draft BOs shared with LMJV's

agent, Clint Jones).  Similarly, the *bcc* function was used to conceal communications sent to LMJV agent Adam Poe. C0000935, C0001244, C0001230, C0030626.

The Forest Service AR must, but does not, contain all communications.

### 5.    Interlocutory Decisions are Not Supported by ARs

As described in detail in Section I.A.3 above, several interlocutory actions and decisions, were taken, but there is no administrative record to support the decisions.

First, the SIR decision was made by Tom Malecek, who, "[b]ased upon findings and rationale presented in this SIR, […] determined that a supplement of the EIS is not necessary." VWC02249. Mr. Malecek's determination that the Forest Service would not conduct additional NEPA analysis, despite changed circumstance, new information, and deficiencies identified by Judge Matsch is an agency action subject to challenge based on the AR considered by Mr. Malecek, supplemented with material he ignored. *N.M. ex rel. Richardson v. BLM,* 565 F.3d 683, 704 (10th Cir. 2009) (review of NEPA decisions must "consider only the agency's reasoning at the time of decisionmaking").

Second, the Wolf Creek Ski Area Master Development Plan has significant overlap with LMJV's access request and development plans. 73 FR 54786 (September 28, 2008).  Any alternative that requires LMJV, the ski area, and the Forest Service to use a shared Hwy 160 access has been ignored due to an ongoing feud between LMJV and WCSA. VWC02651-2, VWC02661. The failure to include alternatives that address all three parties' existing and foreseeable U.S. Hwy 160 access requirements constitutes a NEPA violation. VWC02653-55. The NEPA violation ripened again with the 2019 FROD, which segmented the access alternatives and impacts involving ski area

expansions from the traffic generated by LMJV's access and development proposal. *Id.;* VWC02926 (Ski Area letter supporting segmented U.S. Hwy. 160 access).

"[A] person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737, 118 S. Ct. 1665, 1672 (1998). The Forest Service AR included documents approving the Meadow Lift Development (VWC01566) and other ski area projects, each of which overlaps with LMJV's access, utility, and development proposals. VWC01540 -1621.

The Agencies made and documented each decision listed in Section I.A.3 in isolation from the LMJV NEPA analysis and AR, and the administrative record from each decision is required for the present litigation.

### 6.  2013 BO - AR from 2015 Litigation

The FWS AR from the 2015 litigation (Ex. 12) is necessary to assess changed positions and conclusions between the 2013 BO (found invalid) and the 2018 BO that relied heavily on the 2013 BO analysis. *See Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 2020 U.S. Dist. LEXIS 95986, at *9 (D. Alaska June 1, 2020).

### C.  Effective Relief is Provided by Ordering Completion and Allowing an Opportunity to Conduct Discovery and Move to Supplement

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973).  Here, the AR was "made initially in the reviewing court" by the Agencies' litigation team. Doc. ##26-1, 26-2. Therefore, the *post hoc* AR bears no resemblance to a trial court record sent up for appellate review. *Olenhouse, 42 F.3d at*

*1580* (setting out rationale for customary treatment of APA review as if appellate review). "When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Bar MK Ranches*, 994 F.2d at 740.

"An agency may not unilaterally determine what constitutes the Administrative Record, [ . . .] nor can the agency supplement the Administrative Record submitted to the district court with *post hoc* rationalizations for its decision." *Id. at* 739-740. The Agencies' unilateral assembly of the *AR* during litigation and the cryptic declarations violate both prongs of this rule, and supports discovery. Doc. ##26-1, 26-2. Plaintiffs' "clear evidence" and the lack of detailed information in the Agencies' declarations not only warrant an order compelling completion of the record, the circumstances warrant Conservation Groups' use of discovery to complete and supplement the AR. *Id. cited by Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.

For documents that were not included in the AR assembled during this litigation, including the documents released pursuant to FOIA, discovery is required to establish threshold questions of: "(1) when the documents were presented to the agency; (2) to whom; (3) and under what context." *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275 *citing WildEarth Guardians v. Salazar*, 2010 U.S. Dist. LEXIS 32256, *17 (D. Colo. April 1, 2010) (*citing Pacific Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 7 (D.D.C. 2006)). Because of the differing FOIA and APA standards, the Agencies provided no context for the FOIA productions. Ex. 10-11. Discovery propounded on each decisionmaker would establish: (1) when and whether any decisionmaker considered information in a particular record; (2) which decisionmaker(s)

actually considered the information; and, (3) the context of the consideration, including the relevant decision(s)/action(s). *Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275.

Discovery is also necessary to establish the relevant exceptions to the Administrative Record rule. *Id.*  Discovery is one means to establish a district court record that allows judicial review of claims seeking to set aside agency actions. *Id.*

**D.     Request for Supplementation with Extra-Record Evidence**

Plaintiffs proffer three categories of extra-record evidence. *Id.*

**1.     All Exhibits are Admissible Extra-Record Evidence**

Plaintiffs submit that for the reasons set out above, and although premature without benefit of discovery, the proffered exhibits are allowable extra-record evidence in the present litigation. Ex. 1- 14.

**2.     Arizona Documents**

Three additional Forest Service documents (ex. 15- 17) demonstrate that the Forest Service has exercised its regulatory authority to deny requests to use National Forests for road and utility access after applying "screening criteria" to a proposal for "significant residential and commercial development."  Ex. 15 at 1.

**3.     Standing and Harm Declarations**

As is the normal course of APA litigation, there is no opposition to Conservation Groups filing standing declarations at the time the merits briefing is filed.

**E.     Alternative Relief**

**1.     Set Aside All Agency Actions Related to LMJV's Applications**

Courts have a range of options when faced with an inadequate record that prevents APA review and/or affirmation of an agency action. *Olenhouse*, 42 F.3d at

1577 ("attempt to supply a reasoned basis for the agency's action therefore was impermissible and prejudicial"). Setting aside the ROD, and all agency actions/decision set out above, is a proper resolution of this litigation. *High Country Conservation Advocates v. U.S. Forest Serv.*, 67 F. Supp. 3d 1262, 1265 (D. Colo. 2014) ("NEPA's goals of deliberative, non-arbitrary decision-making would seem best served by the agencies approaching these actions with a clean slate.").

### 2.    Enter Findings Eliminating Deference

After extensive inquiry and informal discovery, Magistrate Judge West took an innovative approach by allowing supplementation and entering a set of findings based on the absence of contractor records and other irregularities. *Colo. Wild, Inc. v. U.S. Forest Serv.*, 2007 U.S. Dist. LEXIS 83638, at *9 (D. Colo. Nov. 1, 2007). This included a finding "that the USFS should not be entitled to a presumption of regularity regarding the development of the Administrative Record in this case." *Id.*

Although the present case has not involved a Magistrate or discovery, Magistrate Judge West's order provides a guide for establishing a record and entering preliminary findings. Not surprisingly, soon after Magistrate Judge West filed the AR order, the case settled in February 2008. W10726, *Colo. Wild, Inc. v. U.S. Forest Serv.*,2008 U.S. Dist. LEXIS 122662, at *4 (D. Colo. May 6, 2008) (all LMJV access approvals withdrawn).

### IV.    CONCLUSION

Plaintiffs respectfully request the Court fashion an order that establishes required administrative record(s), allows discovery, supplementation with extra-record evidence, and/or provides such relief as is necessary to conduct APA review.

**RESPECTFULLY SUBMITTED June 16, 2020:**

*s/ Travis E. Stills*          **Matthew Sandler**          **Peter Hart**
**Travis E. Stills**          Rocky Mountain Wild          Wilderness Workshop
Energy & Conservation          1536 Wynkoop St. Suite          PO Box 1442/520 S. 3rd St,
Law                            900                            Suite 27
1911 Main Ave., Ste 238        Denver, CO 80202               Carbondale, CO 81623
Durango, CO 81301              303-579-5162                   (970) 963-3977 x12
(970) 375-9231                 Matt@rockymountainwild.         peter@wildernessworkshop.org
stills@frontier.net            org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2020 I served a copy of this motion an all parties

using the CM/ECF system, unless otherwise noted below.

*s/Travis E. Stills*
**Travis E. Stills**