IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-1512-CMA

ROCKY MOUNTAIN WILD; SAN LUIS VALLEY ECOSYSTEM COUNCIL; SAN JUAN CITIZENS ALLIANCE; WILDERNESS WORKSHOP;
    Plaintiffs,
  v.
DAN DALLAS, TAMARA WHITTINGTON, BRIAN FEREBEE, UNITED STATES FOREST SERVICE, ANNE TIMBERMAN, and U.S. FISH AND WILDLIFE SERVICE;
    Defendants.

LEAVELL-MCCOMBS JOINT VENTURE,
    Defendant-Intervenor.

_____

**REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF THE ADMINISTRATIVE RECORD**
_____

Plaintiffs ("Conservation Groups"), through Counsel, reply in support of an order compelling production of all documents that comprise the entire Administrative Record ("AR"), along with an opportunity to conduct discovery to support AR completion and extra-record supplementation. The Federal Agencies filed a joint response (Doc. #46) that Intervenor Leavell-McCombs Joint Venture ("LMJV") joined in full. Doc. #47.

**I.    Background**

The Response confirms that the current dispute turns on the invalidation of the 2006 decisions to grant LMJV's access request, and the 2008 agreement to prepare a new analysis and decision on LMJV's request to expand and segregate its existing access to a parcel of federally encumbered land. *Compare* Doc. #46 at 2 *with* Doc. #45 at 1-2. The Response, like the AR, ignores the July 24, 2008 Special Use Permit Application, Notice of Intent to begin NEPA analysis, and other documents created

under leadership of a Mark Twain National Forest NEPA specialist who gained input from agencies such as the Colorado Department of Transportation. *Id*.

Instead, the Response jumps to 2011, and like the AR, ignores the considerable agency concerns generated in response to the oft-amended 2008 application that culminated in LMJV's 2018 requests. *Compare* Doc. #46 at 2 *with* Doc. #45 at Ex. 1-9. The failure to address the 2008-2011 records generally, and the specific examples provided from that period, confirm the AR is incomplete and eliminates any presumption of regularity that might have attached to the ARs prepared during the previous and current litigation. *Colo. Wild, Inc. v. U.S. Forest Serv.*, 2007 U.S. Dist. LEXIS 83638, at *9 (D. Colo. Nov. 1, 2007) (findings on AR irregularities and record destruction).

This Administrative Procedure Act ("APA") case involves a post-hoc AR that bears no resemblance a judicial docket. Here, unlike an Article III Court - and formal agency adjudication that affords similar due process protections - the Response confirms that administrative records did not exist when any informal agency decisions were made or actions were taken. Doc. #46 at 6. The AR was assembled during litigation. *Id*. The related Freedom of Information Act ("FOIA") litigation also remains unresolved. Discovery is the proper means to identify documents required to complete and supplement the AR for LMJV's oft-amended Special Use Permit request that was initiated in 2008. *Id*., *WildEarth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1256 (D. Colo. 2010) (applying "too narrow a test in determining which materials were indirectly considered, the court risks frustrating judicial review by allowing exclusion of materials that may have influenced the agency's decision, including any evidence that was counter to the agency's position.").

The Response confirms that the next step in this APA litigation is discovery and the opportunity to complete the AR(s) and/or supplement with extra-record evidence to inform judicial review of informal agency actions and decisions made without a formal administrative record. Doc. #1 at ¶¶21-28 (list of agency actions).

### A.  Current Litigation

The Response does not dispute any facts asserted by the Motion.

### B.  Preparation of the Administrative Record

The Response does not dispute that the two proffered declarations lack any detail on the creation, maintenance, or certification of any administrative record.

### C.  Agency Actions and Decisions Requiring an AR

The Response, without citation, erroneously argues that only the final agency action is reviewable. Doc. #46 at 17. However, the APA explicitly confirms that, "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." 5 U.S.C. § 704. The Response confirms the agency erred as to the scope of APA review, and as a result, the AR only addresses the "final agency action" the government believes is subject to judicial review. Doc. #46 at 17. The actions, interlocutory decisions, and the decisionmakers identified in the Motion were also set out in the Complaint, thereby putting the government on notice of the scope of APA review. *See infra*, Section B.5.

Legal error as to the scope of APA review resulted in a legally deficient AR.

### D.  Contents of ARs Filed by the Agencies

The Response admits material omissions in an AR that purports to only cover the final agency action. *Id.* Instead of seeking to fill in the gaps, the Response confirms the

3

AR is a *post h*oc assembly of cherry picked documents the government believes would support its ultimate decision. *Dist. Hosp. Partners, L. P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2014) ("agency [may not] exclude information simply because it did not rely on it for its final decision.") (*citations omitted*).

The Response does not justify the exclusion of the 2015 FWS AR (Doc. #45-12) from the land exchange litigation even though this analysis (USFWS_002969) was relied upon in the 2018 BO. Doc. #45 at 7. The Response dodges the fact that the SIR relied on the 2014 FEIS (VWC02249), but the 2014 FEIS contractors' records were not in the previous AR, as supplemented, and "were never presented to the agency." *Rocky Mountain Wild v. U.S. Forest Service*, 878 F.3d 1258, 1262 (10th Cir. 2018).

The Response relies on the "blind spot" theory of insulating decisions by using contractors and other AR-limiting tactics that are not allowed in the Tenth Circuit. *Id.*

### E. Rule 7.1 Conferral

The Response does not dispute the fact that the parties' conferred and the agreement that standing declarations are properly filed with merits briefing.

## II. Standards Applied to Establish Judicial and Administrative Records

The Response relies heavily on District of Columbia caselaw that supports Conservation Groups' request. That caselaw confirms that, "a complete administrative record should include all materials that might have influenced the agency's decision[.]"). *Amfac Resorts, LLC v. United States DOI,* 143 F. Supp. 2d 7, 12 (D.D.C. 2001). When, as here, that is not the case, "the only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency." *Id.* citing *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir. 1993).

The Response infers the AR is analogous to the "civil docket" maintained by a district court (Fed.R.Civ.Pro 79), but also confirms the AR did not exist until after litigation was filed. Doc. #46 at 3 *quoting Camp v. Pitts*, 411 U.S. 138, 142 (1973) ("[T]he focal point . . . should be the administrative record already in existence, not some new record made initially in the reviewing court."). Certainly, if the Court of Appeals received a docket that was gathered and compiled by the District Court from an internal document dump after a Notice Appeal was filed, the District Court decision and proceedings would be set aside. Yet, the agencies argue that an AR gathered during litigation to support informal agency decisionmaking deserves the same respect as the "civil docket" maintained by an Article III Court. Doc. #46 at 3.

Notably, informal agency actions bear few hallmarks of due process found in the Article III courts or formal APA adjudications. *See e.g.* 5 U.S.C. §§554, 556-557 (parties must be given notice of "the matters of fact and law asserted,"); §554(b)(3) (an opportunity for "the submission and consideration of facts [and] arguments"), §554(c)(1) (an opportunity to submit "proposed findings and conclusions" or "exceptions") §557(c)(1), (2). The formal recordkeeping provisions of 5 U.S.C. §556(e) are analogous to the due process protections in Article III Courts, but were not followed during informal decisionmaking. The comparison of the AR to a "civil docket" is not warranted.

Preconditions must exist to support the notion that "the designation . . . is entitled to a presumption of administrative regularity." *Bar MK Ranches,* 994 F.2d at 740 (citation omitted). Most notably, post-hoc assembly of an AR limited to the final agency action does not satisfy the Tenth Circuit APA review standard that "requires a plenary

5

review of the record as it existed before the agency." *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1576 (10th Cir. 1994).

The Response does not deny that a presumption of regularity, even when properly established, can be overcome by showing, "'among other things, [that] defendants applied the wrong standard'" when compiling the administrative record. *Pitman v. U. S. Citizenship and Immigration Services*, 2018 WL 3232355 * 3 (D. Utah July 2, 2018) (citation omitted). When there is a "showing that the record may not be complete" or the AR did not exist until litigation was filed, discovery is warranted. *See e.g. Bar MK Ranches*, 994 F.2d at 739).  The Motion provided the required showings.

### III.     Argument

The declarations do not describe how any agency decisionmaker created or maintained an AR for any challenged final agency action or interlocutory decision, and there is no basis to analogize the AR to a District Court record provided for appellate review. *Olenhouse*, 42 F.3d at 1556 (failure to base judicial review on "the administrative record" and the grounds set forth by the agency during the administrative proceeding constitutes "prejudicial error").

####     A.     The Agencies applied the Wrong Standard

The Response effectively claims that any set of documents filed by the agency must be accepted by the District Court, unless Plaintiffs can provide evidence that overcomes a "presumption of regularity." Doc. #46 at 5 *quoting Bar MK Ranches,* 994 F.2d at 740 (citation omitted). Unquestioning judicial deference to a bare agency filing that does not provide any evidence of the contents of the AR is not the standard. *Id.* at 6-7. Similarly, the practice of waiting to assemble an AR until a decision is challenged in

Court confirms that the agencies, and their litigation counsel who helped gather and construct the AR, applied the wrong standard. *Id.* at 6, *Olenhouse*, 42 F.3d at 1556 (APA "requires a plenary review of the record as it existed before the agency.").

### 1. No Privileged Records and No Privilege Log in AR

The Response ignores authorities confirming documents considered by the decisionmakers must be withheld or redacted by "invocation of the deliberative process privilege, as documented in a privilege log." *Ctr. for Biological Diversity v. Bernhardt*, 2020 U.S. Dist. LEXIS 92370, at *20 (S.D. Fla. May 26, 2020). The Response asks the Court to pretend that the documents so involved in the decisionmaking as to qualify for deliberative process privilege may be withheld from the record. Doc. #46 at 10.

The Response mistakenly relies on the "mental process" approach used by the D.C. Circuit to wrongly exclude *documents* that were considered, directly or indirectly, by the decisionmakers. *Id.* at 8-10. This theory has been considered, and directly rejected, for informal agency decisionmaking ARs. *In re Nielsen,* 2017 U.S. App. LEXIS 26821, at *17 (2d Cir. Dec. 27, 2017) (requiring an AR privilege log).

> "[W]hile it is true that "review of deliberative memoranda reflecting an agency's mental process . . . is usually frowned upon, in the absence of formal administrative findings"—e.g., in the case of "[a] nonadjudicatory, nonrulemaking agency decision"—"they may be considered by the court to determine the reasons for the decision-maker's choice."

*Id.* at 13. The present case involves informal, not formal, agency decisionmaking.

Moreover, Conservation Groups seek records, and do not seek to probe the mental processes of agency personnel while balancing alternatives. Instead, records "concern[] the arguably nondiscretionary and definitely quantifiable physical process of drafting memoranda which weigh alternatives." *Franklin Sav. Corp. v. United States*,

7

180 F.3d 1124, 1133 (10th Cir. 1999). Simply put, the "mental process" reasoning of the D.C. Circuit is an irrelevant standard, as confirmed by the Second and Tenth Circuit distinctions between the physical records sought by the Motion and the unquantifiable thought processes, normally identified by deposition, that are not sought by this Motion.

Bad faith and blind deference are not the standards; "second-guessing is, instead, the point of the APA." *Franklin Sav. Corp.*, 180 F.3d at 1140. Similarly, establishing privileged status is a function of the Court, not the agency.

> Courts routinely make determinations of privilege in other contexts, and they are expert at doing so. . . . There is no reason why courts cannot make identical determinations in APA lawsuits in order to determine the proper scope of the administrative record.

*New York v. Wolf,* 2020 U.S. Dist. LEXIS 75238, at *7 (S.D.N.Y. Apr. 29, 2020) (internal quotations and citations omitted). Agencies are treated like "any other litigant." *Id.* at *9.

### 2. The Whole Record must be Produced

The first step in the adversarial process of creating a district court record - production of the whole AR - has not been completed. *Bar MK Ranches*, 994 F.2d at 740 ("An agency may not unilaterally determine what constitutes the Administrative Record"). "[U]nder the APA, a district court reviews an agency action based on the full administrative record (not merely on agency records), which 'consists of all documents and materials directly or indirectly considered by the agency.'" *Rocky Mtn. Wild,* 878 F.3d at 1262 *quoting Bar MK Ranches*, 994 F.2d at 739. An order to produce the "whole record" for each final and interlocutory agency action provides the information required for meaningful AR motions practice and avoids "frustrating effective judicial review." *Ctr. for Biological Diversity* 2020, U.S. Dist. LEXIS 92370, at *17 (S.D. Fla. May 26, 2020).

B.     The AR is Incomplete

1.     Documents Released and Withheld Pursuant to FOIA

The Response misrepresents the basis for including FOIA records. Doc. #46 at 11. The Response concedes that withholding of potentially relevant records are subject to closely related and ongoing FOIA litigation. Doc. #1 at ¶195. The parties agree that different standards apply to APA disclosure. *Rocky Mt. Wild*, 878 F.3d at 1262.

Here, distinct from the FOIA litigation, the Complaint and Motion identifies lack of FOIA access during the administrative proceedings as a legal basis for NEPA and APA relief. Doc. #1 at ¶¶120-2, 190, 193-198, 303-4 (Claim 10) (public involvement), ¶313 (undue influence). The Response now argues these APA/NEPA questions must be litigated in the FOIA case. The use of FOIA violations to avoid public involvement, to the fullest extent possible, is a cognizable NEPA claim, properly asserted and reviewable on a supplemented AR. *Id.*, 40 C.F.R. §1506.6(a); *Rocky Mt. Wild*, 878 F.3d at 1262.

2.     Contractor Records

The Response argues that Judge Matsch's AR ruling - made from the bench, without a written opinion - has a preclusive effect in the present litigation. Doc. #46 at 12.  The relevance of contractor records to the ANILCA Special Use Permit consideration was not fully litigated by Judge Matsch, and even if it had been litigated, was entered before the Court of Appeals ruled on the related FOIA case that distinguished between APA and FOIA standards. *Rocky Mt. Wild,* 878 F.3d at 1262.

The Response relies on stale declarations that contradict Mr. Samford's candid admissions and representations to Judge Matsch that confirmed the contactor was not asked to produce, or even identify, the whole of the administrative record in the

contractor's and sub-contractors' possession. Doc. #46 at 12. It is of no consequence that the Forest Service left the contractor records in a "blind spot." *Rocky Mt. Wild*, 878 F.3d at 1262. The test is whether decisionmakers directly or "indirectly considered" […] "the work and recommendations of subordinates." *WildEarth Guardians*, 713 F. Supp. 2d at 1256 (internal quotation omitted). The failure to consider NEPA contractor records warrants relief, and the first step is disclosure of all undisclosed "Forest Service work product belonging to the Forest Service." *Id.* at 1264; *Bar MK Ranches*, 994 F.2d at 739 ("the only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency.").

The Response argues that Forest Service personnel "Dave Dyer and [Randy Ghormley]" took the correct approach in raising alarm bells. CP002043. However, there is no record to conduct judicial review on: 1) similar alarm bells; or 2) actions taken in response to persistent internal agency alarms. *Bar MK Ranches*, 994 F.2d at 739.[1]

The Response provides no basis to ignore the FOIA contractor "blind spot" identified by the Tenth Circuit. *Rocky Mt. Wild,* 878 F.3d at 1262. An order to complete the record would remedy this omission. *Ctr. for Biological Diversity*, 2020 U.S. Dist. LEXIS 92370, at *20 *citing Ctr. for Native Ecosystems v. Salazar,* 711 F. Supp. 2d 1267, 1274 (D. Colo. 2010). Discovery also provides a proper tool to establish extra-record evidence involving the contractor "blind spot". *Bar MK Ranches*, 994 F.2d at 739.

---

[1] e.g., CP000001 (emails regarding alarm over documents dated 2006-2008); CP000415 (emails questioning purpose and need); CP000415 (March 2012 emails regarding struggle with "similarly situated properties"); CP002823 (October 2014 emails regarding problems documenting access to similarly situated properties); C0006139 (discrepancy with NEPA and ESA effects analysis – resolved through "call" with contractor); Doc. #1 at ¶¶185-98, 311-23.

### 3.     Pre-2011 Records

The Response (Doc. #46 at 14) avoids the fact that the 2008 Application and related records are not contained in the previous ARs or current AR. Doc. ##45-2- 45-7. It is undisputed that the 2008 Settlement Agreement required a new NEPA analysis for any LMJV access proposal. *Id.* The June 11, 2008 letter is among the few indications in the Administrative Record that a 2008 Special Use Permit Application existed. W01501. The proffered records are not in any AR. Doc. #45 at Ex. 2-7.

Instead, the Response argues that decisionmaking "began in earnest" in 2011, after the Mark Twain National Forest NEPA expert had been jettisoned, a land exchange alternative was added to the 2008 ANILCA proposal, and the outside NEPA contractor was hired. Doc. #14 at 14. The concerns in documents from 2008 to 2011 remain relevant to this litigation. *See e.g.* Doc. #1 at ¶¶ 3-4, 40, 46, 138, 152-6, 162.

Uncontested evidence shows relevant records from 2008 through 2011, and whether considered or ignored by the agency, all such records must be produced for APA review. *Bar MK Ranches*, 994 F.2d at 739.

### 4.     Communications

The Response admits that the "FOIA production includes many more communications than the APA record" and engages the merits by arguing that LMJV's communications during the Forest Service decisionmaking are not indicative of "undue influence." Doc. #46 at 15-16. The premature merits argument effectively admits that all communications must be part of the AR, or at least produced "to demonstrate that specific communications meet the criteria for completion or supplementation." Doc. #46 at 16.  All claims, especially contractor bias and undue influence (Doc. #1 at 185-98,

11

311-23), must be informed by the APA rule that "an agency may not skew the record by excluding unfavorable information." *Dist. Hosp. Partners,* 971 F. Supp. 2d at 20.

The "Communications" category of the Forest Service AR contains five documents (VWC02250-2370) and the as-yet incomplete response to RMW's FOIA Request contains more than 140,000 pages of mostly emails and other documents considered by the decisionmakers. Doc #45-11 at 2. Whether for AR completion or extra-record evidence, AR discovery is the means to "establish the context in which the decision was made." *Wildearth Guardians*, 713 F. Supp. 2d at 1261 (reviewing emails).

### 5.     Interlocutory Decisions are Not Supported by ARs

Contrary to the legally and factually erroneous assertions in the Response, each "preliminary, procedural, or intermediate agency action or ruling" is also referenced in the Complaint. Doc. #1 at ¶¶ 21 ("As part of the APA review, the 2014 FEIS, [SIR], and NEPA analysis, Biological Opinion, and each agency action underlying or implementing the ROD are subject to APA-based judicial review."); ¶38 ("Each challenged agency action is final and subject to judicial review under 5 U.S.C. §§ 702, 704, and 706."), pp. 87-88 ("D. Vacate and set aside the 2014 FEIS, SIS, 2019 FROD, and all underling analysis […] E. Vacate and set aside the 2018 BO, Conservation Agreement, Biological Assessment, and other actions taken and information relied upon […]").

The challenged actions include:

- **Final Record of Decision ("2019 FROD" - VWC04088)**. *See e.g.* Doc. #1 at ¶¶4, 7, 18, 19, 21-25.

- **Final Environmental Impact Statement ("2014 FEIS" - W10694)**. *Id.* at ¶19.

- **Supplemental Information Report ("2019 SIR" - VWC02244)** *See e.g. Id.* at ¶27 (admit in part).

12

- **Biological Assessment ("2018 BA" - VWC02196 )** *See e.g. Id.* at ¶¶329, 338.

- **Biological Opinion ("2018 BO" - VWC02198)** *See e.g. Id.* at ¶26 (admit in part).

- **Incidental Take Statement ("2018 ITS" - VWC02226-30)** *See e.g. Id.* at ¶26 (admit in part).

- **Wolf Creek Ski Area's Mater Development Plan ("2015 WSCA MDP" - VWC01604)** (**Meadow Lift Decision Notice ("Meadow Lift DN")** *See e.g. Id.* at ¶31 (admit with correction that Wolf Creek Ski Area now has seven lifts).

- **Rocky Mountain Wild's July 20, 2018 Freedom of Information Act Requests ("FOIA Request" - Ex. 9**) *See e.g. Id.* at ¶¶120-121 (admit in part), 195-198 (admit in part, and aver that referenced documents "are the best evidence of their content"), 303-304, 310, 313 (deny on the basis that referenced documents "speak for themselves and constitute the best evidence of their content.").

- **Objection Extension Denial - VWC03825.** *See e.g. Id.* at ¶304.

- **Objection Dismissals - VWC03927.** *See e.g. Id.* at ¶¶36, 51 (admitted), 53 (admitted in part), 304, 315.

- **Objection Denial - VWC03928.** *See e.g. Id.* at ¶¶36, 52 (admitted), 53 (admitted in part).

- **2018 Objection Response - VWC03932.** *See e.g. Id.* at ¶¶36, 58 (admitted in part), 121, 321-322.

For each action, the documents considered directly or indirectly must be disclosed.

### 6. 2013 BO - AR from 2015 Litigation

The Response does not seriously contest that the FWS AR from the 2015 litigation (Doc. #45-12) is necessary to assess changed positions and conclusions between the 2013 BO (found invalid) and the 2018 BO that relied heavily on the 2013 BO analysis. *See Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 2020 U.S. Dist. LEXIS 95986, at *9 (D. Alaska June 1, 2020).

### D. Request for Supplementation with Extra-Record Evidence

Plaintiffs proffer three categories of extra-record evidence. *Id*.

#### 1. All Exhibits are Admissible Extra-Record Evidence

The Response ignores the citations in the Motion that set forth, in detail, the basis for entering Doc. #45-1 - #45-14 as extra-record evidence. Doc. #46 at 18. Instead of repeating each assertion, and to comply with page limits, the arguments from the main body of the Motion were incorporated by reference to support the consideration of the exhibits during merits briefing. Doc. #45 at 19; *see e.g. Id.* at 14 (contractor records), *citing Franklin Savings Ass'n*, 934 F.2d at 1137; *Id.* at 15 (pre-2011 documents); *Id.* at 18-19 (discovery required to determine whether document completes record or is extra-record.); *Bar MK Ranches*, 994 F.2d at 739 ("the only way a non-agency party can demonstrate to a court the need for extra-record judicial review is to first obtain discovery from the agency.").

#### 2. Arizona Documents

The Response does not dispute the authenticity of three Forest Service documents that apply the regulatory authority in 36 C.F.R. Part 251 to deny requests for road and utility access after applying "screening criteria" to a proposal for "significant residential and commercial development." Doc. #46 at 18, Doc. #45 at Ex. 15-17. Indeed, the caselaw is clear that the ANILCA approval is not automatic. Doc. #45 at 15 *citing Friends of Alaska Nat'l Wildlife Refuges v. Bernhardt*, 2020 U.S. Dist. LEXIS 95986, at *9-24 (D. Alaska June 1, 2020) (ANILCA's purpose "is explicitly stated to be preservation and subsistence."); *Utah Envtl. Cong. v. Troyer*, 479 F.3d 1269, 1276 n.3 (10th Cir. 2007) (ANILCA access review "'must comply with other laws and regulations,'

14

including NEPA.") *quoting* 16 U.S.C. § 3210. Without benefit of discovery, the Court and parties are unable to address the threshold questions involving extra-record evidence. *Id.* at 18 *citing Ctr. for Native Ecosystems*, 711 F. Supp. 2d at 1275 (elements of extra-record evidence proffer); *Bar MK Ranches*, 994 F.2d at 739 (APA discovery allowed).

### C.     Discovery is Warranted

The Response does not contest the fact that the AR was made initially in the reviewing court by the Agencies' litigation teams. Doc. ##46-1, 46-2. Therefore, the *post hoc* ARs bear no resemblance to a trial court record sent up for appellate review. *Olenhouse, 42 F.3d at 1580* (rationale for treating APA review as if appellate review). Instead, the Response relies on a hodge-podge of opinions that confirm discovery plays a role in APA litigation. Doc. #46 at 19. The Tenth Circuit confirmed that "[a]n agency may not unilaterally determine what constitutes the Administrative Record, [ . . .] nor can the agency supplement the Administrative Record submitted to the district court with *post hoc* rationalizations for its decision." *Bar Mk Ranches, 994 F.2d at* 739-740.

Depositions to obtain mental impressions are not part of the instant request. Plaintiffs seek discovery to establish whether the AR omissions are properly considered as part of the AR, as extra-record evidence, or not at all. *Id.*

### D.     Alternative Relief

The Response does not address alternate relief and therefore the Court may properly: 1) set aside all agency actions related to LMJV's applications; or, 2) enter findings eliminating agency deference. Doc. #45 at 19-20.

### IV.    CONCLUSION

Plaintiffs respectfully request the Court grant Conservation Groups' Motion.

**RESPECTFULLY SUBMITTED July 28, 2020:**

| *s/ Travis E. Stills* | **Matthew Sandler** | **Peter Hart** |
|---|---|---|
| **Travis E. Stills** | Rocky Mountain Wild | Wilderness Workshop |
| Energy & Conservation Law | 1536 Wynkoop St. Suite 900 | PO Box 1442/520 S. 3rd St, Suite 27 |
| 1911 Main Ave., Ste 238 | Denver, CO 80202 | Carbondale, CO 81623 |
| Durango, CO 81301 | 303-579-5162 | (970) 963-3977 x12 |
| (970) 375-9231 | Matt@rockymountainwild.org | peter@wildernessworkshop.org |
| stills@frontier.net | | |

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2020 I served a copy of this motion an all parties using the CM/ECF system, unless otherwise noted below.

    *s/Travis E. Stills*
**Travis E. Stills**

16